## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS BADILLO-CRUZ**<br>**Petitioner**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA**<br>**Respondent** | **Civil No. 04-2408 (PG)**<br>**[Related to Criminal No. 00-333 (PG)]** |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Luis Badillo-Cruz (hereafter "Badillo") filed a Motion under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (**Docket No. 1**). Badillo claims that he was denied effective assistance of trial counsel at the time of his guilty plea and sentencing. The government opposes the motion and submits that the claims are devoid of merit (**Docket No. 7**).

This matter was referred to the undersigned for report and recommendation (**Docket No. 3**). For the reasons set forth below, this Magistrate-Judge **RECOMMENDS** that the motion be **DENIED**.

### I.    Procedural and Factual Background

Badillo was one of 19 named defendants in a one count indictment filed on June 30, 2000. *Criminal Case No. 00-333(PG)*, **Docket No. 2**. He was charged for his participation in a conspiracy to illegally possess with intent to distribute multi-kilogram quantities of controlled substances (i.e. heroin, cocaine and cocaine base), in violation of 21 U.S.C. § 841(a)(1) and § 846.

A change of plea hearing was held on February 5, 2001. *Id.* at **Docket Nos. 188, 549**. At that time Badillo withdrew his plea of not guilty and entered a straight guilty plea to the charge brought against him, although he contested his participation in an overt act related to a murder. *Id.* During the change of plea hearing Badillo indicated to the Court that his attorney had advised

Civil No. 04-2408 (PG) [Related to Criminal No. 00-333 (PG)]                    Page 2

him of the possible minimum and maximum penalty, that is, ten years to life imprisonment. *Id*. at **Docket No. 549**, p. 8. Badillo was asked if anyone had forced him to plead guilty, and he responded "no". *Id*. at **Docket No. 549**, p. 10.  He was also asked, "Has anyone made any predictions to you as to what sentence I am going to impose?", and Badillo responded, "no". *Id*. The following colloquy then occurred:

| THE COURT: | I want each of you[1] to understand that I am not bound by any sentencing recommendations to be made by your attorneys or by the attorney for the government, and that I have discretion to impose any sentence up to the maximum of life that each one of you knows. Do each one of you understand that? . . . |
| DEFENDANT BADILLO: | Yes. |
| THE COURT: | And I want you to also to be aware of the fact that if I do impose a term of imprisonment that turns out to be higher than . . . either one of you might be expecting, that this reason alone will not be grounds for the court to allow you to withdraw your plea of guilty.  Do you understand that? . . . |
| DEFENDANT BADILLO: | Yes. |

*Id.* at **Docket No. 549**, p. 11-12.

During the hearing the government advised the Court that through evidence available it would prove that Badillo had conspired to illegally possess over 150 kilograms of cocaine, over 30 kilograms of heroin and over 1.5 kilograms of crack cocaine. *Id*. at **Docket No. 549**, p. 17. When specifically questioned by the Court, Badillo agreed with the evidence in the possession of the government and agreed with the scope of his participation in the drug distribution scheme as described by the government. *Id.* at **Docket No. 549**, p. 18.   The Court found, after having advised Badillo of his rights, that defendant had voluntarily waived those rights; and proceeded to accept defendant's guilty plea.  *Id.*   The record reflects that during the change of plea proceedings the Court advised defendant of the maximum penalties to which exposed, the supervised release term and the consequences of his guilty plea. *Id.*

A Pre-Sentence Report was prepared and disclosed to the parties.  The same reflects that Badillo acted as an enforcer for a drug organization based at the Tibes Housing Project in Ponce,

---

[1]Badillo's change of plea hearing was held contemporaneously with that of co-defendant Gabriel Cruz-Rivera.

Puerto Rico, and that he had participated in the killing of the leader of a rival drug trafficker.  The Pre-Sentence report reflected a Base Offense Level (hereafter "BOL") of 36 based on the fact that the drug quantities were at least 50 but less than 150 kilograms of drugs.  The Pre-Sentence Report recommended the addition of two points to the BOL because Badillo possessed a firearm, and added two more points based upon Badillo's managerial role in the offense.  Three points were deducted for defendant's acceptance of responsibility.  A total Adjusted Offense Level (AOL) of 37 was determined.  The Pre-Sentence Report established Badillo's Criminal History Category (CHC) as III.   Based upon the AOL and the CHC, the guideline imprisonment range was 262 to 327 months.

The sentencing hearing was held on October 3, 2001[2]. *Id.* at **Docket No. 657**.  Badillo was asked if he was aware of the contents of the Pre-Sentence Report, and if his attorney had explained to him the information contained in the report.  Cruz answered, "yes".  *Id.* at **Docket No. 657**, p. 3. Next Cruz was asked if there was any information he wished the Court to correct, and Cruz answered, "no".  *Id*.

The government then informed the Court that the parties had reached a stipulation, noting that counsel for Badillo's attorney filed "some motions" objecting to the pre-sentence report.  The Court was then informed that the parties had agreed to recommend to the Court a BOL of 34. *Id.* Pursuant to the stipulation, the government agreed it would hold Badillo accountable for the illegal possession and distribution of at least 50 but less than 150 kilograms of cocaine.  It was also stipulated an increase in the offense level by four:  two for his leadership role, and two for possession of a firearm during the commission of a drug offense.  *Id.* at **Docket No.  657**, p. 4. The BOL would be decreased by three points given defendant's acceptance of responsibility, for a total adjusted offense level (AOL)  of 37, and a criminal history category of three[3].  *Id.*  The government recommended a term of imprisonment of 276 months or 23 years imprisonment.  *Id.*

---

[2]The sentencing transcript incorrectly states the date of the sentencing as April 5, 2002.  (*See* Criminal No. 00-333 (PG), **Docket 657**).

[3]The BOL and Criminal History Category stipulated to is identical that contained in the Pre-Sentence Report.

Badillo was asked by the Court if he was aware of the stipulation regarding as to the sentencing guideline calculation and the sentence to be recommended to the Court and whether it continued the stipulation  entered into between him, his attorney and the attorney for government, and he responded "yes".  *Id.*

The Court advised Badillo that based upon the total offense level of 37, and a criminal history category of III,  the guideline imprisonment range was 252[4] [sic] to 327 months imprisonment.  *Id.* at **Docket No.  657**, p. 7.  The Court then proceeded to impose a term of imprisonment of 276 months, a supervised release term of seven years and a special monetary assessment of $100. *Id.* at. **Docket No. 389**. Judgment was entered on October 3, 2001.  *Id.*

Badillo appealed his sentence and conviction.  *Id.* at **Docket No. 436**. On May 5, 2004, after addressing the issues raised, the Appellate Court affirmed the judgment and sentence.  The Appellate Court found no defect in the Change of Plea colloquy, and further that the plea was accepted only after appellant had agreed to the district court's description of both the conspiracy (offense conduct) and appellant's role within it.  *United States v. Badillo-Cruz*, No. 01-2661 (1st Cir. April 14, 2004). The Appellate Court went on to state that "[a]s to sentencing, the stipulation entered into by the government and appellant was independent of the plea that had previously been entered.  Therefore, the stipulation had no bearing on the plea itself.  There was no reason, in a situation where appellant and counsel were both present at the discussion of the stipulation that concerned sentencing only, for the court to interfere."

Badillo did not seek review by the United States Supreme Court.  He now brings this § 2255 motion.  He claims relief based on a claim of ineffective assistance of counsel during the change of plea hearing and at sentencing.  In doing so, petitioner asserts as follows:

1.   His guilty plea was not a knowing, intelligent and voluntary plea, because he plead guilty based upon the assurances by his counsel that an agreement had been entered into that he receive a term of imprisonment of 15 years.

2.   His guilty plea violates the standards of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).

---

[4]The guideline range is actually 262 to 327 months.  The fact that within the sentencing transcripts it is reflected "252", appears to be a typographical or clerical error.

3.      Whether the fact of a prior conviction that increased his sentence beyond that authorized by a jury verdict of his admission needs to be stated in the indictment and found beyond a reasonable doubt.

4.      Whether his attorney was ineffective for failing to object and investigate an inapplicable use of a prior conviction that increased both his base offense level and criminal history category.

## II.    Conclusions of Law

### A.    Legal Standard

Pursuant to 28 U.S.C. § 2255 there are four grounds upon which a federal prisoner may base a claim for relief. A petitioner may assert that: 1) the sentence was imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to impose such sentence; 3) the sentence was in excess of the maximum authorized by law; and, 4) the sentence is otherwise subject to collateral attack. A federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . ." 28 U.S.C. §2255. However, such a petition may be summarily denied where it contains mere bald assertions without specific factual allegations. *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992).

If a motion fails to raise an issue cognizable under § 2255 or if the movant fails to make an adequate representation concerning cause and prejudice, a court may, in its discretion, deny the motion without conducting an evidentiary hearing. R. Governing Sec. 2255 Proceedings 4(b); *see also Barrett v. United States,* 965 F.2d 1184, 1186 (1st Cir.1992). In addition, even a facially adequate petition may be denied without a hearing where the alleged facts are conclusively refuted by the files and records of the case. *Id.*; *accord, Lema v. United States*, 987 F.2d 48, 51-52 (1st Cir. 1993).

Badillo seeks an evidentiary hearing. However, the undersigned finds it is not necessary based upon the petition and the criminal record, including the transcripts of the change of plea hearing and sentencing.

Once sentence has been imposed, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255. *United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir.

1997).  "A defendant does not enjoy an absolute right to withdraw a plea of guilty, once it has been entered". *United States v. Miranda-Santiago*, 96 F.3d 517, 522 (1st Cir. 1996) (*citing United States v. Isom*, 85 F.3d 831, 834 (1st Cir. 1996)). When a petitioner challenges a guilty plea on the grounds of ineffective legal assistance, in order to show prejudice he must prove that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord*, *United States v. Mateo*, 950 F.2d 44, 47 (1st Cir. 1991).  Also, "[i]t is well settled that this right to effective assistance of counsel attaches at all critical stages of the trial, *United States v. Wade,* 388 U.S. 218 (1967), including at sentencing. *Gardner v. Florida,* 430 U.S. 349, 358 (holding that "sentencing is a critical stage of the criminal proceeding at which [defendant] is entitled to the effective assistance of counsel")."  *United States v. Colón-Torres*, 382 F.3d 76, 85 (1st Cir. 2004).

To satisfy the first prong Badillo must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Thus, the errors of counsel must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." *United States v. Ortiz Oliveras,* 717 F.2d 1, 3-4 (1st Cir. 1983). And under the second prong, even where unprofessional error during the plea process is shown, no relief is available absent demonstration of a "reasonable probability that, but for counsel's errors, [Badillo] would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.  In a post-conviction proceeding, the burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence. *Scarpa v. DuBois,* 38 F.3d 1, 8-9 (1st Cir.1994)*; Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993).

### B.    Guilty Plea

Badillo argues that his counsel was ineffective and that this ineffectiveness resulted in a guilty plea that was not knowing, intelligent and voluntary.  More particularly, he contends that he agreed to enter a straight guilty plea based upon the representation of his attorney, Santiago Pereles (hereafter "Attorney Pereles"), that there was an agreement with the U.S. Attorney's Office

that the Court would not sentence Badillo to more than 15 years.  Badillo was ultimately sentenced to 23 years imprisonment.

The record reflects that prior to sentencing, Attorney Pereles filed motions advising the Court that he intended to call witnesses during the sentencing hearing. *Criminal Case No. 00-333(PG)*, **Docket Nos. 337, 350**.  Attorney Pereles also filed a petition for writ of habeas corpus ad testificandum to preclude the government from transferring a witness Badillo's wished to call and have testify at the sentencing hearing.  The Court issued said writ on October 2, 2001.  Sentencing was held the next day.

Badillo asserts that he only plead guilty because his attorney assured him he would receive a 15 year term of imprisonment.  He contends that subsequent to his guilty plea and the issuance of the Pre-Sentence Report, his attorney reached a stipulation with the government that Badillo would be sentenced to 23 years imprisonment. Badillo contends that rather than pursue an evidentiary hearing at sentencing[5], and unknown to him, his attorney entered into a stipulation with the government.   Badillo indicates that he would have not plead guilty, but insisted upon going to trial, had he been advised of the consequences of the plea.  In his motion, Badillo claims that he first became aware of the stipulation during sentencing.  Badillo contends he was denied his right to due process because counsel's misrepresentation induced him to plead guilty. Alternatively, Badillo argues that his counsel was ineffective in that he failed to timely inform him that the government had changed its position as to the recommended sentence.  Petitioner argues that this denied him the opportunity to withdraw his guilty plea.

The government responds that  Badillo raised this claim on direct appeal and as a result he is not entitled to relitigate the issue. Alternatively, the government argues that Badillo's claim rests only upon his self-serving statements without corroboration.  The government contends that Badillo fails to substantiate those statements with any material issues of fact sufficient to overcome the presumption of regularity at both, the Change of Plea and Sentencing Hearings.

---

[5]Badillo sought to call witnesses to challenge the government's contentions in overt act #14 regarding Badillo's involvement in a murder and Badillo's  role in the conspiracy.  Specifically Badillo contends he was not a triggerman and had a minimal role.

Initially, the undersigned notes that Badillo is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law. *Davis v. United States,* 417 U.S. 333, 342 (1974) (holding that a § 2255 hearing is permitted on an issue previously addressed on direct appeal when there has been an intervening change in the law). *Cf. Singleton v. United States,* 26 F.3d 233, 240 (1st Cir. 1993) ("'[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion.'" (quoting *Dirring v. United States,* 370 F.2d 862, 864 (1st Cir. 1967)); *United States v. Michaud,* 901 F.2d 5, 6 (1st Cir. 1990) ("We note that certain other claims raised in the § 2255 motion were decided on direct appeal and may not be relitigated under a different label on collateral review.").   Additionally, Badillo is not entitled to relitigate issues that could have been raised on direct appeal, but were not, absent a showing of cause excusing the default and actual prejudice resulting from the error of which he complains. *See United States v. Frady,* 456 U.S. 152, 167-68 (1982); *Suveges v. United States,* 7 F.3d 6, 10 (1st Cir. 1993) (holding that a party must show cause and prejudice to raise an objection not argued on direct appeal in a § 2255 motion (citing *Frady* )).

Notably,  the present claim is the same as  raised on direct appeal, albeit it now is clothed as an ineffective assistance of counsel claim. The U.S. Court of Appeals for the First Circuit found no defect in the Change of Plea colloquy.  More so, it found that any sentencing stipulation had no bearing on the plea itself.  Nonetheless, the undersigned will briefly address the claim now brought by Badillo.

It is a well settled principle that if a defendant's guilty plea has not been voluntarily entered, it has been obtained in violation of due process and is therefore void. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir. 1997).  In order to satisfy the due process guarantee, a guilty plea must be entered "with sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748 (1970); *United States v. Noriega-Millán*, 110 F.3d 162, 166 (1st Cir. 1997). To prevail on this claim, Badillo "must prove by a preponderance of the evidence that his counsel unreasonably erred in permitting him to plead guilty, and that prejudice resulted." *Cody v. United States,* 249 F.3d 47, 52 (1st Cir. 2001) (*citing Strickland v. Washington,* 466 U.S. 668, 687 (1984)).  This,

Badillo has failed to do.

The law of this Circuit is firm and establishes that a litigant is bound by his statements to the Court. The Court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *United States v. Parrilla-Tirado*, 22 F.3d 368, 373 (1st cir. 1994 (citing *United States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir. 1989)).  More so, "the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so. *United States v. Butt*, 731 F.3d 75, 79 (1st Cir. 1984).  "A defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." *Id.* (citing *Crawford, supra,* 519 F.2d at 350; *United States v. Goodman,* 590 F.2d 705, 710 (8th Cir. 1979);*Walker v. Johnston,* 312 U.S. 275, 286 (1941).

Great consideration is given to the transcript of the Rule 11 hearing, and because it is contemporaneous with the entering of a change of plea, it is highly relevant and provides competent evidence.  *Butt,* 731 F.2d at 78-79. Inasmuch as a major purpose behind the Rule 11 inquiry is to promote the finality of litigation, *see Ouellette,* 862 F.2d at 374, Badillo has the burden of coming forward with reasons to show why his prior testimony, given under oath, was not accurate. *Panzardi-Alvarez v. United States,* 879 F.2d 975, 982 (1st Cir. 1989).

During the Change of Plea the Court conducted an extensive inquiry before accepting Badillo's plea.  During the Rule 11 hearing,  Badillo indicated to the Court that his attorney had advised him of the possible minimum and maximum penalty, that is, ten years to life imprisonment.  He was asked if anyone had forced him to plead guilty, and he responded "no".  He was also asked if anyone had made any predictions as to the sentence the Court would impose and he also responded, in the negative.   Badillo advised and assured the Court that as of the date

of the change of plea hearing, he was pleased with the legal services rendered by his attorney.

He also advised the Court that he understood that the Court was not bound by any sentencing

recommendations made by his attorney or by the attorney for the government.   Finally, Badillo

indicated to the Court that he understood that if the Court imposed a term of imprisonment higher

than expected, that in itself was not reason alone to withdraw the guilty plea.

Neither can it be overlooked that at the time of sentencing, Badillo was specifically asked

by the Court if he was aware of the stipulation entered into between his attorney and the

government "as to the sentencing guideline calculations and sentence to be recommended to the

court".  To this question, petitioner responded in the affirmative.  More so, when he spoke to the

Court with regret and apologizing for his criminal actions, Badillo made no mention whatsoever

that he did not agree or was unaware of the sentencing stipulation. Notably, at no time during the

change of plea or the sentencing hearing did Badillo ever inform the Court that he had been

advised by counsel that his term of imprisonment would be limited to 15 years.  Badillo was given

ample opportunity to advise the Court of any misunderstanding he might have had, yet he did

nothing of the sort.

Actually, the record is abundantly clear and eloquent establishing that Badillo was duly

advised by the Court of the maximum penalties to which exposed and the fact that the Court had

 ample discretion in determining the sentence to be imposed.  The colloquy at the Rule 11

**(Docket No. 549)** reads as follows:

THE COURT:                          Mr. Badillo, do you know what the minimum and maximum possible
                                    penalty provided by the law is?

DEFENDANT BADILLO:    Yes.

Civil No. 04-2408 (PG) [Related to Criminal No. 00-333 (PG)]                    Page 11

---

THE COURT:                        What did your attorney explain to you as to that?
DEFENDANT BADILLO:                The minimum is ten and the maximum is life.

THE COURT:                        And a fine of up to four million dollars, a term of supervised release of at least five years and a one hundred special monetary assessment.

DEFENDANT BADILLO:                Yes.

**Docket No. 549** at p. 8

THE COURT:                        Has anyone made any predictions to you as to what sentence I am going to impose?

DEFENDANT BADILLO:                No.

THE COURT:                        And Mr. Badillo, has anybody threatened you in any way to induce you to plead guilty?

DEFENDANT BADILLO:                No.

THE COURT:                        Is anybody forcing you in any way to plead guilty?

DEFENDANT BADILLO:                No.

THE COURT:                        Has anyone offered you any rewards or other things of value to get you to plead guilty?

DEFENDANT BADILLO:                No.

THE COURT:                        Has anybody made any predictions to you as to what sentence I am going to impose upon you?

**Docket No. 549** at p. 10

DEFENDANT BADILLO:                No.

THE COURT:                        Now, I want each one of you to understand that I am not bound by any sentencing recommendations to be made by your attorneys or by the attorney for the government, and that I have discretion to impose any sentence up to the maximum of life that each one of you knows. Do each one of you understand that?

Civil No. 04-2408 (PG) [Related to Criminal No. 00-333 (PG)]                    Page 12

---

DEFENDANT BADILLO:     Yes.

THE COURT:             And I want you also to be aware of the fact that if I do impose a term
                       of imprisonment that turns out to be higher than anyone either one
                       of you might be expecting, that this reason alone will not be grounds
                       for the court to allow you to withdraw your plea of guilty.  Do you
                       understand that?

DEFENDANT BADILLO:     Yes.

*Id.* at **Docket No. 549**, p. 11

Accordingly, the evidence on record compels to conclude that Badillo was fully informed

of the conditions and consequences of his plea by the Court during his change of plea hearing,

and expressly acknowledged such understanding.  The record is clear that Badillo was competent

and fully aware of his actions. Contrary to Badillo's position, the record reflects a plea that was

knowing, intelligent and voluntarily entered.

More so, there is no indication that his attorney was ineffective during either the change

of plea or sentencing hearings. Badillo "must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v.

Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. Louisiana*, 350 U .S. 91, 101 (1955)).

A fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*,

466 U.S. at 689.

Badillo has failed to overcome the presumption that Attorney Pereles's actions were

nothing but sound trial strategy. Following the change of plea hearing Attorney Pereles filed

appropriate motions in an apparent attempt to reduce the sentence.  During the Change of Plea hearing the Government indicated that it would prove Badillo's involvement with drug amounts of over 150 kilograms of cocaine, over 30 kilograms of heroin and over 1.5 kilograms of crack cocaine.  After the filing of the motions by Pereles, the government agreed to a stipulation of a quantity of drugs of at least 50, but less than 150 kilograms of cocaine. Had there been no filing of motions or ensuring negotiations after the change of plea, no doubt, the original criteria would have resulted in  a harsher and lengthier sentence for Badillo than after the actions taken by his attorney. Notably, Badillo has shown no prejudice as a result of his attorney's actions.  If anything, the actions of his attorney resulted in a lesser sentence than Badillo could have anticipated. Indeed, the statutory sentence was a minimum of ten years to life, but Badillo was sentenced well beneath the life sentence to a term of 276 months of imprisonment.

Accordingly, it is therefore RECOMMENDED that Badillo's ground for relief on the basis that his guilty plea was not knowing, intelligent and voluntary due to counsel's ineffective assistance  be DENIED.

**C.      Apprendi/Blakely Claim**

Badillo next argues that the decisions in both, *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) affect his guilty plea.  Badillo concedes that during the change of plea hearing he agreed that he was pleading guilty for his participation in a conspiracy to distribute narcotics, but not to anything related to a killing.  He also argues he made no admissions regarding his role in the offense or possession of weapons.  Badillo concedes that the "agreed distribution of drugs was permissible and appropriate".  He contends that *Blakely*

Civil No. 04-2408 (PG) [Related to Criminal No. 00-333 (PG)]                    Page 14

requires specific findings of facts necessary for an "aggravating role, possession of weapons, enhancement and drug quantity".   He also argues that the evidence on record does not support beyond reasonable doubt, a finding concerning his supervisory role.  Badillo posits that it is unfair to consider a weapons offense committed during the time frame of the conspiracy in support of an enhancement for both his criminal history and the total offense level.  Finally, petitioner argues that the only evidence alluding to any prior offenses are contained solely in the Pre-Sentence Report.

Apprendi holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Additionally, Apprendi "applies only when the disputed 'fact' enlarges the applicable statutory maximum and the defendant's sentence exceeds the original maximum" United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001).  In the present case, Badillo was sentenced to a 276 month term of imprisonment.  This term clearly did not exceed the statutory maximum term of life imprisonment, nor was it outside the guideline imprisonment range of 262 to 327 months.  Accordingly, it is considered there was no Apprendi error inasmuch as, Apprendi "applies only when the disputed 'fact' enlarges the applicable statutory maximum and the defendant's sentence exceeds the original maximum." United States v. Caba, 241 F.3d 98, 101 (1st Cir.2001). Here, Badillo's sentence did not exceed the maximum authorized by the facts or applicable statutory provisions at the time he was sentenced.

Similarly, Badillo's argument cannot go forward as to Blakely inasmuch as, it has no retroactive effect.  Blakely was decided on June 24, 2004, but Badillo was sentenced some two

and a half years earlier in October 3, 2001. The First Circuit has held that petitions under 28 U.S.C. §§ 2255 are unavailable to advance *Blakely* claims in the absence of a Supreme Court decision rendering *Blakely* retroactive. *Cuevas v. Derosa,* 386 F.3d 367, 368 (1st Cir. 2004).

Badillo also argues that his counsel was ineffective in that he did not raise an *Apprendi* challenge at the time of sentencing. He asserts that his attorney was ineffective when he failed to pursue a request for an evidentiary hearing, failed to demand an adequate factual basis for sentencing enhancements, and acted under a conflict of interest. Badillo contends that the government proffered a "mere broad allegation" that various witnesses would testify that Badillo was a member of the conspiracy. He argues that his attorney erred in not objecting to the proffer and that his attorney never pressured the Court regarding the request for a hearing.

As previously discussed, at the time of change of plea, Badillo pleaded guilty to a conspiracy charge, but contested his participation in the killing of an individual. The time frame of the conspiracy was from 1997 through the return of the indictment on June 30, 2000. The government advised the Court that the evidence established that Badillo had conspired to possess over 150 kilograms of cocaine during the period of the conspiracy and over 30 kilograms of heroin and over 1.5 kilograms of crack cocaine. The government also indicated that in approximately 1997 Badillo had been arrested while in the illegal possession of a firearm. Badillo's counsel indicated to the Court that he had received discovery from the government and had discussed it with Badillo. Badillo acknowledged in open Court that he agreed with the government's evidence. Additionally, Badillo acknowledged in open Court that he was aware of the contents of the Pre-Sentence Report and that there were no changes to be made. The Pre-Sentence Report

contained information regarding Badillo's criminal history and the underlying offense conduct that lend support to the Court's application of the sentencing guidelines and the sentence imposed.

In light of the overwhelming evidence against Badillo, it cannot be said that his Attorney was ineffective for failing to raise an *Apprendi* challenge.  It must be noted that for enhancements to apply, the standard is that they must be shown by a preponderance of the evidence. *United States v. Flecha-Maldonado,* 373 F.3d 170, 179-80 (1st Cir. 2004). Again, it must be pointed out that even with enhancements, Badillo's sentence did not exceed the statutory maximum.  Finally, rather than face a  possibly  doomed *Apprendi* challenge, and based upon the evidence against Badillo, it is considered that trial counsel acted reasonably in seeking a sentencing stipulation with the government.  As discussed, above, it cannot be said that Badillo was prejudiced by the actions of his attorney.

It is therefore RECOMMENDED that Badillo's *Apprendi/Blakely* challenge be DENIED. It is further RECOMMENCED that the ineffective assistance of counsel claim brought pursuant to *Apprendi/Blakely* be DENIED.

### D.    Shepard Claim

Badillo raises a claim under *Reginald Shepard v. United States*, –U.S.–, 125 S.Ct. 1254 (2005).  At the time Badillo filed the pending § 2255, the United States Supreme Court had granted certiorari, but had not rendered a decision in  *Reginald Shepard v. United States*. However, *Shepard* was decided on March 7, 2005.  Badillo raises a *Shepard* issue claiming that the case might address the issue of whether the fact of a prior conviction that increased a sentence beyond that authorized, needs to be alleged in the indictment and proven beyond a reasonable

doubt.  The Government asks that this claim be rejected inasmuch as Badillo' sentence was not beyond that authorized by his admissions.

In *Shepard v. United States,* – U.S.–, 125 S.Ct. 1254 (2005), the Supreme Court held that inquiry under the Armed Career Criminal Act (ACCA) to determine whether a plea of guilty to burglary defined by a non-general statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information. Initially, the undersigned notes that Badillo was not sentenced under the ACCA.  More so, Badillo did not challenge the computation of his criminal history category and in fact indicated to the Court that he was aware of the contents of the Pre-Sentence Report (which included a Criminal History Category computation) and that there was no information in the Report that he wished the Court to correct.

Finally, Badillo's direct appeal was decided in April 2004, almost a year prior to the *Shepard* decision, and *Shepard* had not been decided at the time that Badillo filed his § 2255 motion in December 2004.  Although it has yet to be decided by the First Circuit, it is highly unlikely that the holding in *Shepard* is retroactive.  Most courts that have decided the issue, have found that it is not.  *See Darco v. United States*, No. CV-04-1378(CPS), 2005 WL 1804475, at *4 (E.D.N.Y. July 28, 2005) (*Shepard* is not retroactive);  *Langley v. United States*, No. 1:04CV952, 2:96CR95-1, 2005 WL 1114710, at *1 (M.D.N.C. May 5, 2005) (same); *Olivas-Gutiérrez v. United States,* No. EP05CA-0139-DB, EP02CR-1406-DB, 2005 WL 1241871, at *4 (W.D.Tex. May 19, 2005) (also holding that *Shepard* is non-retroactive); *United States v. Olusajo,*

CRIM. 02-584, 2005 WL 1124099 (E.D.Pa. May 5, 2005) ("It is unlikely that *Shepard* would be given retroactive applicability").   The undersigned agrees that *Shepard* is not retroactive.

In the same vein, Badillo argues that his attorney was ineffective in that he failed to investigate the conviction that increased his criminal history category by two levels.  While not altogether clear, it appears that Badillo relies upon *Shepard* to support his allegations. This claim that is specious to say the least, inasmuch as, *Shepard* was decided just this year, and Badillo was sentenced three years ago, in 2002. Badillo's expectation that his counsel be a soothsayer of future Supreme Court rulings is unrealistic as well as contrary to the law of what is expected for effective assistance of counsel.

Based upon the foregoing, it is therefore RECOMMENDED that Badillo's *Shepard* challenge be DENIED.

## III.    Conclusion

Based upon the foregoing analysis, **IT IS RECOMMENDED** that motion for relied under 28 U.S.C.  § 2255 (**Docket No. 1**) be **DENIED** and **DISMISSED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-

Civil No. 04-2408 (PG) [Related to Criminal No. 00-333 (PG)]                    Page 19

Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 29th day of September, 2005.

S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**